# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| INTERNET MACHINES LLC, | § | |
| | § | |
| v. | § | No. 6:10-cv-023 |
| | § | |
| ALIENWARE CORP., ET AL. | § | |

## MEMORANDUM OPINION & ORDER

This is a patent infringement case involving Defendants from all over the country, including Texas. Defendants, led by their indemnitor PLX Technology, Inc., move to transfer to the Northern District of California pursuant to 28 U.S.C. § 1404(a). After limited venue discovery, Plaintiff has shown that much of the evidence would be more conveniently accessed from this district, and, likewise, trial would be more convenient in this district for many of the relevant witnesses. For the reasons stated below, Defendants' motion to transfer venue is denied. Defendants have not established that this matter initially could have been brought against all Defendants in the Northern District of California. Nor have Defendants demonstrated, as is their burden, that the Northern District of California is a clearly more convenient forum to bring this matter than the Eastern District of Texas. Accordingly, the Court denies Defendants' motion (Doc. No. 208).

## BACKGROUND

Plaintiff Internet Machines LLC filed suit against eighteen defendants alleging infringement of United States Patents Nos. 7,421,532 and 7,454,552. The patents-in-suit concern computer switches with transparent and non-transparent ports. Defendant PLX manufactures computer switches allegedly capable of infringing the patents-in-suit.

The remaining Defendants are PLX's customers, namely: National Instruments Corp., Cyclone Microsystems, Inc., Extreme Engineering Solutions, Inc., GE Intelligent Platforms

Embedded Systems, Inc., V Rose Microsystems, Inc., and Vadatech, Inc.[1] These customers incorporate PLX's computer switches into their own products. As summarized below, the parties' witnesses and evidence are located in at least eight states, including Texas. Most of these locations are significantly closer to this district than to the Northern District of California.

Plaintiff is a Texas limited liability company formed four months before it filed suit. Plaintiff has a Longview, Texas mailing address and resides in the Eastern District of Texas. Plaintiff has three members all of whom live outside the Northern District of California: (1) Francis Knuettel II of Colorado; (2) Francis P. Knuettel of Virginia; and (3) Steven Sereboff of Southern California. Plaintiff states that its relevant documents are located either at its office in Longview or at Mr. Knuettel's home office in Denver.

PLX is headquartered in the Northern District of California in Sunnyvale, California. Although Sunnyvale is its largest office, PLX also has offices in the United Kingdom, Taiwan, and India. Jack Regula, PLX's chief scientist and the architect of the accused computer switches, lives in North Carolina. PLX's vice-president of sales lives in Philadelphia. PLX's field application engineers, who help customers design products that work with PLX's computer switches, are located throughout the United States, including Dallas, Sunnyvale, and Boston. Additionally, one of PLX's sales representative is based out of Austin, Texas. More than 90% of PLX's domestic sales are distributed by Mouser, which is located in Mansfield, Texas and Avnet Corp., which is located in Phoenix. Two of PLX's manufacturer's representatives—Quad States Sales & Marketing and Semicom—are also located in Texas.

---

[1] Alienware was originally named in this suit but was later dismissed (Doc. No. 185).

Defendant National Instruments (NI) is headquartered in Austin, Texas. The engineers that designed NI's accused products are located in Austin. The accused products were tested in Austin and assembled and tested in Hungary. NI has sales offices throughout the United States, including thirteen in Texas, and its national sales headquarters is in Austin. Additionally, NI's marketing department and customer support engineers are located in Austin.

Defendant Cyclone Microsystems (Cyclone) is headquartered in New Haven, Connecticut. All of Cyclone's employees and documents are located in Connecticut.

Defendant Extreme Engineer Solutions (XES) is headquartered in Middleton, Wisconsin. Although XES has an employee in San Diego, another in Houston, and another in New Hampshire, most of its employees are located in Middleton. XES purchases its computer switches from a distributor and does not have any direct dealings with PLX.

Defendant GE Intelligent Platforms Embedded Systems (GE) is headquartered in Charlottesville, North Carolina. GE's products were designed and manufactured in at least six locations, including Alabama, North Carolina, Massachusetts, the United Kingdom, Germany, and Canada. Documents related to these products are stored either on location or at a central repository in Cincinnati. Sales people are located throughout the country, including Texas—the largest group is located in Alabama. Customer support personnel are based in Alabama, the United Kingdom, and Germany.

Defendant V Rose Microsystems (V Rose) is headquartered in Johnstown, New York. Both V Rose's president and head of sales live in Florida. V Rose's other employees, including its engineer, work in New York. Relevant documents are located in Florida and New York.

Defendant Vadatech is headquartered in Las Vegas, Nevada. All of Vadatech's employees and documents are in Las Vegas.

Finally, relevant third-party witnesses include the three named inventors, as well as the patent agent who helped prosecute the patents-in-suit, all of whom live in Southern California and outside the Northern District of California.[2]

**LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A threshold inquiry is whether suit "might have been brought" in the proposed transferee venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). Once a defendant satisfies that burden, the Court weighs the *Gilbert* factors to determine if transfer is warranted. *Volkswagen*, 545 F.3d at 314 n.9; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) (listing the relevant factors). The moving party must show good cause by demonstrating the transferee venue is clearly more convenient. *Volkswagen*, 545 F.3d at 315.

The *Gilbert* factors are divided between private and public interests. "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315 (internal quotation marks omitted). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having

---

[2] Defendants also identified Steven Sereboff, the prosecuting attorney, as a possible third-party witness. Mr. Sereboff is a member of Plaintiff and better characterized as a party witness.

localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (internal quotation marks omitted). These factors are not exhaustive, and no single factor is dispositive. *Id.*

## DISCUSSION

**I.     Could This Case Have Been Brought in the Northern District of California**

Section 1404(a) only permits transfer to a district that would have had jurisdiction over all the defendants. 28 U.S.C. § 1404(a); *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009). An out-of-state defendant is subject to personal jurisdiction when exercising jurisdiction is permissible under the relevant state's long-arm statue and does not violate federal due process. *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376–77 (Fed. Cir. 1998). Where, as here, the transferee state's long-arm statute is coextensive with due process, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004), the only inquiry is whether exercising jurisdiction comports with due process. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230–31 (Fed. Cir. 2010). Federal Circuit law controls this analysis. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

The parties disagree whether Defendants, other than PLX, would be subject to personal jurisdiction in the Northern District of California. Defendants allege that these Defendants have sufficient contacts to establish jurisdiction because they sell and distribute their products within the Northern District of California. Plaintiff argues this assertion is conclusory, unsubstantiated, and inadequate. Although Plaintiff denies any of the non-Californian Defendants have sufficient contacts, it focuses its argument on Defendants V Rose and Cyclone.

Personal jurisdiction may be general or specific. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005). General jurisdiction exists whenever a defendant has continuous and systematic contacts with the state. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). When a defendant's contacts with the forum state are too limited to confer general jurisdiction, the defendant may still be subject to specific jurisdiction when the cause of action stems from the defendant's contacts with that state. *Trintec*, 395 F.3d at 1279.

Defendants argue that Defendants V Rose and Cyclone are subject to general jurisdiction in California because they "sell or distribute products throughout the United States, including within the Northern District of California," Defs.' Mot. at 8, and "they have regularly conducted business in and maintained a steady stream of contacts with the State of California." Defs.' Reply at 3. Neither V Rose nor Cyclone has any offices or representatives in California, but both state they transact business with customers and suppliers in that state. Additionally, both companies maintain Internet websites through which California residents may contact them.

Plaintiff contends that V Rose's and Cyclone's contacts with California fall short of conferring general jurisdiction. Plaintiff also challenges the sufficiency of V Rose's and Cyclone's declarations. Plaintiff characterizes them as filled with generalizations and improper legal conclusions. Although Plaintiff concedes that these Defendants do some business with California entities, Plaintiff argues their transactions are not so extensive as to amount to a business presence that would subject either defendant to general jurisdiction.

The evidence of V Rose's and Cyclone's contacts with California is inadequate to establish either entity is subject to general jurisdiction in that state. Their declarations that they have made

"numerous" transactions with California entities are insufficient to support general jurisdiction. *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) ("vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction"); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) ("mere purchases, even if occurring at regular intervals, are not enough to" establish general jurisdiction). Similarly, their websites do not create the necessary contacts because the evidence does not suggest that the websites were specifically directed at California residents. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (quoting *Trintec*, 395 F.3d at 1281) (finding that website does not establish general jurisdiction when it "is available to all customers throughout the country who have access to the Internet"). Given this limited evidence, neither V Rose nor Cyclone has *extensive* contacts with California that amount to having a business presence in that state. *Johnston*, 523 F.3d at 611 (distinguishing between doing business *in* a state, which confers general jurisdiction, and doing business *with* a state).

"[E]ven where general jurisdiction is not available, specific jurisdiction may be exercised." *Campbell Pet Co.*, 542 F.3d at 884. For example, Cyclone may be subject to specific jurisdiction based on its representation that more than 10% of its sales of accused products were to California entities. But Defendants do not contend that V Rose is subject to specific jurisdiction. Unlike Cyclone, V Rose's declaration is silent as to whether its business with California residents involved any of its accused products. Indeed, V Rose's representative testified that its California customers are "unrelated to this lawsuit." Desorbo Dep. at 26:5–6. Thus, the Court has no basis to conclude V Rose may be subject to specific jurisdiction in California because there is no argument or evidence that its limited contacts with California gave rise to this suit.

Therefore, Defendants have failed to establish that they would all be subject to jurisdiction in the Northern District of California. Accordingly, transfer is not available pursuant to § 1404. Alternatively, even if jurisdiction was proper in the Northern District of California, the *Gilbert* factors weigh against transfer.

## II. Consideration of the *Gilbert* Factors

The *Giblert* factors include public and private interests. They are not exhaustive, and no single factor is dispositive. Having considered these factors, as well as all other relevant facts and circumstances, the Court concludes that the Northern District of California is not clearly more convenient than this district.

### A. Private Interest Factors

#### 1. Relative Ease of Access to Sources of Proof

The first *Gilbert* factor is the relative ease of access to sources of proof. This factor weighs in favor of transfer when evidence could be more readily accessed from the transferee district. Although documentary evidence is often stored electronically, the Court considers the physical location of the evidence. *Genentech*, 566 F.3d at 1345–46. Documents relocated in anticipation of litigation are not considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

Defendants argue that this factor favors transfer because PLX will be the primary source of documentary and physical sources of proof for all Defendants. Defendants contend that only minimal evidence will be needed from the other Defendants. Defendants further argue that prior art evidence and witnesses may be located in California. In contrast, Defendants assert that little or no relevant evidence is located in this district. Defendants also argue that any documents located at

Plaintiff's recently opened Longview, Texas office should be ignored for venue purposes. Finally, Defendants state that, even if Defendants other than PLX are sources of proof, they have all agreed that the Northern District of California would be more convenient.

Plaintiff argues that Defendants' representation that PLX will be the primary source of proof is contradicted by the sworn testimony of Defendants' 30(b)(6) representatives. PLX's representative testified that PLX does not know how the other Defendants use or configure the accused switches. And PLX is not aware of how the accused switches are distributed to customers in the United States because their primary distributors, based in Texas and Arizona, are the points of contact. In light of this testimony, Plaintiff argues that discovery from the non-PLX Defendants and from PLX's distributors and manufacturers' representatives is necessary. Finally, Plaintiff argues that its own documents are located at its offices in Denver and in the Eastern District of Texas.

Defendants have not shown that relevant evidence would be more easily accessed from the Northern District of California. Defendants' 30(b)(6) testimony demonstrates that relevant evidence is located throughout the United States, including Texas. The Northern District of California would be more convenient for accessing some of the evidence in this case, particularly that held by PLX and Vadatech. But other evidence, particularly that maintained by PLX's distributors and the other Defendants in this case, is located in Texas, the Midwest, and the East Coast and would be more easily accessed from this district.[3] *Genentech*, 566 F.3d at 1345 (noting accused infringers will be

---

[3] Although Defendants "take[] the position that it is clearly more convenient for them to litigation [sic] this matter in the Northern District of California," the Court must still consider the actual location of the relevant evidence. *See Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-CV-446, 2010 WL 3835762 at *3 (E.D. Tex. Sept. 28, 2010) (noting that the court does not presume the proposed transferee venue is convenient for a defendant, just as it does not presume

significant sources of evidence). And evidence that is located internationally will be equally inconvenient to access from either this district or the Northern District of California. *Id.* at 1346. Finally, Plaintiff's documents are irrelevant to the Court's analysis because they may have been relocated in anticipation of litigation. *Hoffman-La Roche*, 587 F.3d at 1337. Therefore, taking all of these facts and circumstances into consideration, this factor weighs against transfer.

### 2. Availability of Compulsory Process to Secure Attendance of Witnesses

The next factor is the availability of compulsory process. Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses. Absolute subpoena power means the power to compel attendance at both depositions and trial. *Hoffman-La Roche*, 587 F.3d at 1337–38

Defendants argue that transfer is warranted because the Northern District of California has absolute subpoena power over third-party witnesses. Defendants identify the named inventors, the prosecuting patent agent, and the prosecuting attorney. Defendants also vaguely refer to former PLX employees and other third-party witnesses who were involved in developing a technical standard relevant to the patents-in-suit. But Defendants do not provide the specific names and locations of these witnesses, relying instead on the names of international companies for whom they worked and where they are headquartered. Finally, Defendants contend that no third-party witnesses are within the absolute subpoena power of this district.

Plaintiff concedes that the Northern District of California has subpoena power over some witnesses, but argues that this is offset by their willingness to appear at trial. Plaintiff also argues

---

the original district is convenient for a plaintiff).

that the number of witnesses subject to compulsory process in California is offset by those witnesses subject to compulsory process in this district.

Neither party has shown that either this district or the Northern District of California has absolute subpoena power over a meaningful number of third-party witnesses. Defendants specifically identify five individuals, but one of these—Mr. Sereboff, the prosecuting attorney—is a party witness. The other four are willing to attend trial in this district. Defendants' other attempts to identify potential third-party witnesses are inadequate because they do not specifically identify the witnesses or state where those witnesses are located. *See Dymatize Enters., Inc. v. Maximum Human Performance, Inc.*, No. 3:09-CV-1840-O-BH, 2010 WL 972240, at *2–3 (N.D. Tex. Feb. 28, 2010) (holding that, although a party need not provide affidavits identifying witnesses and outlining testimony, it must at least identify the witnesses). And while Plaintiff identifies a number of witnesses in Austin, those witnesses are party witnesses and thus have no bearing on the absolute subpoena power of this district. *See Hoffman-La Roche*, 587 F.3d at 1337–38 (explaining that absolute subpoena power means the power to compel attendance of non-party witnesses at depositions and trial). Ultimately, neither party has identified any uncooperative, non-party witnesses. And nearly all of the identified witnesses are either party witnesses or are outside the absolute subpoena power of either this district or the Northern District of California. Therefore, this factor is neutral.

### 3. Cost of Attendance for Willing Witnesses

One of the most important factors is the cost of attendance for witnesses. The greater the distance witnesses have to travel for trial, the greater their expense and the longer they will be away from home and employment. The Fifth Circuit employs a "100-mile rule" to gauge the relative

inconvenience of a district. *Volkswagen*, 545 F.3d at 317. The level of inconvenience "increases in direct relationship to the additional distance traveled." *Volkswagen*, 545 F.3d at 317 (internal quotation marks omitted). The convenience of non-party witnesses is of greater concern than the convenience of party witnesses. *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F.Supp.2d 703, 711 (N.D. Tex. 2009)

Defendants argue that the Northern District of California would be more convenient for the party and non-party witnesses that reside in California. Once again, Defendants primarily refer to potential witnesses only generally by identifying corporations and where they are headquartered. The only witnesses that Defendants specifically identify are the three named inventors, the prosecuting patent agent, the prosecuting attorney (who is also a member of Plaintiff LLC), and Plaintiff's chief executive officer, Frank Knuettel.

In contrast, Plaintiff specifies dozens of witnesses.[4] These witnesses are located throughout the world, including but not limited to Texas, Wisconsin, Nevada, Connecticut, New York, Florida, North Carolina, Alabama, Canada, England, and Germany.

Plaintiff has shown that this district would be more convenient for the vast majority of identified witnesses. Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles,

---

[4] Plaintiff's exhibit included eighty-one witness entries. Most of these entries identified specific witnesses. Some of these entries generically referred to a category of people (e.g., entry 20 referred to "GE's manufacturing support engineers"). And still other entries identified a group generally, but also named specific witnesses (e.g., entry 22 referred to "GE's finance employees . . . including James Comery (CFO)"). The Court considers only those witnesses that were specifically identified. *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 3:09-CV-0488-D, 2009 WL 2634860, at *6 (N.D. Tex. Aug. 26, 2009) (noting that general statements about where a company's employees are located are inadequate for meaningful transfer analysis).

the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen*, 545 F.3d at 317. Here, both Plaintiff and Defendants have identified some witnesses that would travel farther to this district than to the Northern District of California. And for the international witnesses, travel to either district will undoubtedly be burdensome. But for most witnesses, this district is considerably more convenient. Therefore, this factor weighs against transfer.

### 4. All Other Practical Problems

The fourth factor serves as a catchall for concerns that may weigh for or against transfer. For example, transfer is disfavored when the issue is raised late in the case. *Konami Digital Entm't Co. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-286, 2009 WL 781134, at *7 (E.D. Tex. Mar. 23, 2009). And judicial economy may counsel against transferring a case when it would result in overlapping issues being simultaneously adjudicated in different districts. *In re Vistaprint Ltd.*, 528 F.3d 1342, 1345 (Fed. Cir. 2010).

Defendants contend there are no practical problems that counsel against transfer. When Defendants filed their motion, this case was still in its preliminary stages. The parties had not yet even appeared for a scheduling conference. Defendants acknowledge that Plaintiff filed a related case involving the same patents and some of the same Defendants (as well as an additional patent and different defendants), but Defendants argue that case was filed in an attempt to manipulate venue and should also be transferred to the Northern District of California.

Plaintiff notes that, before it filed its response and this motion became ripe, this case had progressed beyond its earliest stages. The parties participated in a scheduling conference, and the Court entered a scheduling order. Pursuant to that order, the parties exchanged infringement

contentions, invalidity contentions, interrogatory responses, and mandatory disclosures of relevant documents.[5] Plaintiff also claims prejudice if this case is transferred because Defendants did not move to transfer until nine months after the case was filed. Finally, Plaintiff contends judicial economy would be promoted by retaining this case because the related case is also pending before the Court.

This is not a case where other practical problems jeopardize the easy, expeditious, and inexpensive trial of this dispute. Some courts have declined to transfer cases after the parties have made initial disclosures or where it would upset a scheduling order, Markman setting, or trial date. *See, e.g.*, *IBEW-NECA Sw. Health & Benefit Fund v. Duvall Elec., LLC*, No. 3:10-CV-1079-B, 2011 WL 711005, at *4 (N.D. Tex. Feb. 28, 2011) (declining to transfer case two weeks before dispositive motion deadline and four months before trial); *Konami Digital Entm't Co.*, 2009 WL 781134, at *7 (denying motion to transfer filed six months after complaint was filed and after the parties had exchanged infringement contentions and initial disclosures). But in this case, Plaintiff cannot claim prejudice because it is partly responsible for the delay of bringing this motion. Although Plaintiff filed its complaint in early 2010, some of the remaining Defendants were not served until April of that year. Also, resolution of this motion was delayed by Plaintiff's venue discovery request and by both parties' repeated unopposed motions to extend briefing deadlines. Finally, although this case and the related case overlap, judicial economy does not weigh against transfer because the related case was filed four days after Defendants' motion and has not yet had a scheduling conference. Accordingly, no practical problems counsel for or against transfer, and this factor is neutral.

---

[5] Since Plaintiff's responsive briefing, the Court has also held a pre-Markman hearing conference and the parties have exchanged their claim construction briefing.

B. **Public Interest Factors**

1. **Court Congestion**

The first public interest factor is court congestion. Generally, this factor favors a district that can bring a case to trial faster. Plaintiff contends—and Defendants do not dispute—that this factor is neutral.

2. **Local Interest**

The next public interest factor is the local interest in adjudication of the case. Traditionally, the location of the alleged injury is an important consideration. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008). But in a patent infringement case, when the accused products are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id.* Local interest also arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community. *Hoffman-La Roche*, 587 F.3d at 1338.

Defendants argue the Northern District of California has a greater local interest in adjudicating this case because it implicates the reputation of PLX, a company with over 150 employees in that district. In contrast, Defendants contend this district has no interest in this case. Defendants argue that Plaintiff's presence in Longview, Texas is too recent to create a local interest. Defendants also contend that the sale of accused products in this district is inconsequential to the transfer analysis.

Plaintiff argues that the Northern District of California's interest is relatively insignificant because it is home to only one Defendant. Plaintiff contends this district has at least as much interest based on the presence of Plaintiff in the district and Defendant NI in Austin.

The Northern District of California has a greater interest in the adjudication of this dispute due to the presence of PLX in that district. But this interest is tempered by the locations of the other Defendants. Neither district has a profound interest in this dispute because most Defendants do not reside in either district. This district has a small interest due to the presence of a Defendant in this state, but that interest is not overly significant because the Defendant is not located within this district. Finally, none of this district's interest in the case derives from the local sale of accused products, *TS Tech*, 551 F.3d at 1321 (holding the sale of a product in a district does not create a local interest in the case when the product is sold throughout the country), or Plaintiff's recent relocation to the area. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (according a party's presence in the district no weight when it "appears to be recent, ephemeral, and an artifact of litigation"). Therefore, this factor favors transfer.

### 3. Familiarity with the Law & Avoidance of Unnecessary Conflict of Laws

The parties agree both districts are familiar with the applicable law and that there are no concerns about unnecessary conflict of laws. Accordingly, this factor is neutral.

### C. Conclusion

Defendants have not demonstrated that the Northern District of California is clearly more convenient than this district. Defendants initially argued that the "center of gravity" of this case was squarely in the Northern District of California because all evidence, witnesses, and interest would be centered on PLX. But discovery has shown that all Defendants possess relevant evidence and witnesses. This district is relatively more convenient for accessing much of that evidence, and trial in this district will be more convenient for many of the witnesses. Therefore, transfer to the Northern District of California is unwarranted.

## CONCLUSION

For the reasons stated above, Defendants have not satisfied their burden under 28 U.S.C. § 1404(a). Defendants have not shown that this is a case that could have been brought in the Northern District of California. Even if it could have been brought there, Defendants have not shown that the Northern District of California is clearly more convenient. Accordingly, the Court denies Defendants' motion (Doc. No. 208).

**SIGNED this 7th day of June, 2011.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE