# United States District Court
### EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| INTERNET MACHINES LLC | § | |
| | § | |
| v. | § | Case No. 6:10-cv-23 |
| | § | |
| ALIENWARE CORPORATION, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' post-trial motions. For the reasons stated below, the Court makes the following rulings on the parties' pending motions:[1]

- Defendants' Renewed Motion for Judgment as a Matter of Law on Damages (Doc. No. 539) is **DENIED**;

- Defendants' Renewed Motion for Judgment as a Matter of Law of Invalidity (Doc. No. 540) is **DENIED**;

- Defendants' Renewed Motion for Judgment as a Matter of Law of No Induced Infringement (Doc. No. 541) is **DENIED**;

- Defendant PLX Technology, Inc.'s Renewed Motion for Judgment as a Matter of Law of No Willful Infringement (Doc. No. 542) is **GRANTED**;

- Defendants' Renewed Motion for Judgment as a Matter of Law of Non-Infringement (Doc. No. 543) is **DENIED**;

- Defendants' Motion for New Trial Based on Jury Tampering (Doc. No. 544) is **DENIED**;

- Defendants' Motion for New Trial Under *O2 Micro* (Doc. No. 545) is **DENIED**;

- Defendants' Motion for Remittitur or, alternatively, New Trial on Damages (Doc. No. 546) is **DENIED**;

---

[1] After the parties completed briefing on their post-trial motions, they notified the Court of a potential merger. The parties indicated that Integrated Device Technology, Inc. (IDT) was in the process of acquiring Defendant PLX Technology, Inc. Because IDT is already a licensee of the asserted patents, the parties noted that the merger would potentially moot all issues. Subsequently, the FTC filed an administrative complaint challenging IDT's proposed acquisition of PLX. Due to the FTC's intervention, the parties terminated the merger. Accordingly, the Court proceeds with addressing the parties' post-trial motions.

- Plaintiff's Motion for Entry of Judgment (Doc. No. 547) is **GRANTED IN PART**;

- Plaintiff's Motion for Pre and Post-Judgment Interest (Doc. No. 548) is **GRANTED**;

- Plaintiff's Motion for an Exceptional Case Finding, for an Award of Attorneys' Fees and Expert Costs, and for Enhanced Damages (Doc. No. 549) is **DENIED**;

- Plaintiff's Motion for an Award of Post-Verdict Royalties (Doc. No. 550) is **GRANTED IN PART**; and

- Plaintiff's Amended Motion for Award of Costs (Doc. No. 556) is **GRANTED**.

## I.      BACKGROUND

On February 2, 2010, Plaintiff Internet Machines LLC filed this action, alleging, among other things, that Defendants infringed U.S. Patent Nos. 7,454,522 and 7,421,532. In particular, Internet Machines accused Defendant PLX Technology, Inc.'s PCI Express switches of infringing these patents. In response, Defendants contended that the patents were invalid.

On February 29, 2012, following a six-day trial, the jury returned a verdict finding that Defendants infringed all of the asserted claims. The jury additionally found that PLX's infringement was willful. Furthermore, the jury did not find any of the asserted claims invalid. Accordingly, the jury awarded Internet Machines damages totaling $1,018,529.00.[2]

## II.     LEGAL STANDARD

A motion for judgment as a matter of law is a procedural issue not unique to patent law; therefore, the motion is reviewed under the law of the regional circuit. *Summit Tech., Inc. v. Nidek Co., Ltd.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). Judgment as a matter of law is justified

---

[2] Specifically, the jury calculated damages against PLX as $980,340.20, against Cyclone Microsystems, Inc. as $1,098.54, against Extreme Engineering Solutions, Inc. as $4,993.92, against GE Intelligent Platforms Embedded Systems, Inc. as $4,504.32, against National Instruments Corporation as $7,441.92, and against Vadatech, Inc. as $20,150.10.

where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). In addressing a motion for judgment as a matter of law, the Court must "review all of the evidence in the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence." *Ellis v Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The basis for this perspective is that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Reeves*, 530 U.S. at 150.

Thus, a motion for judgment as a matter of law should be granted "only when 'the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.'" *Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 405 (5th Cir. 2007) (quoting *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004)). The court affords "great deference to a jury's verdict" and a judgment as a matter of law is only appropriate "when viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 838 (5th Cir. 2004).

In regard to granting a new trial, the Court, in its discretion, may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). As with motions for judgment as a matter of law, motions for new trial are determined by the law of the regional circuit. *z4 Techs., Inc. v.*

*Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007). Grounds for a new trial include that "the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). The Court must affirm the jury's verdict unless, in viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of the other party that reasonable individuals could not arrive at a contrary conclusion. *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998) (per curiam).

## III.    DISCUSSION

### A.    Defendants' Renewed Motion for Judgment as a Matter of Law of Non-Infringement (Doc. No. 543)

This motion is **DENIED**.

Defendants argue that Internet Machines provided no evidence of direct infringement at trial and, therefore, judgment as a matter of law is justified.

"To prove infringement, a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1378 (Fed. Cir. 2011). Infringement is a two-step test. The first prong requires that "the claim must be properly construed to determine its scope and meaning." *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993). Next, "the claim as properly construed must be compared to the accused device or process." *Id.* Since infringement is a fact question, it is reviewed for substantial evidence. *Star*, 655 F.3d at 1378.

First, Defendants maintain that Internet Machines repeatedly misapplied the Court's claim construction during trial. According to Defendants, Internet Machines explained that a "non-transparent port" is a port "for interfacing to devices . . . with non-shared address domains" rather than adhering to the Court's defined construction of "port(s) associated with a non-shared

address domain (or domains)" (Afternoon Trial Tr. 147:22–23, Feb. 22, 2012, Doc. No. 515). Defendants argue that the Court's construction requires the presence of physical ports while Internet Machine's application only requires the capability of having physical ports in the future. Defendants conclude there is no basis for the jury's infringement finding because Internet Machines failed to establish that any accused product includes a switch with at least one non-transparent port associated with a non-shared address domain.

Defendants point out that at several points in the trial, Internet Machines used the "interfacing" terminology in explaining non-transparent ports. But Internet Machines presented this evidence to explain the function of a port. Internet Machines also separately addressed whether the accused switches included a non-transparent port associated with a non-shared address domain. Internet Machines' technical expert Charles Narad provided detailed testimony connecting the Court's construction and all claim limitations to the accused products.

Defendants also argue that Internet Machines failed to prove that the accused switches included both transparent and non-transparent ports. Yet, Mr. Narad provided testimony in direct contradiction to this argument. For example, Mr. Narad explained how the data books containing the switches' technical specifications supported his analysis that the accused products contained at a minimum two transparent ports and one non-transparent port. Mr. Narad also relied upon information provided by PLX engineers, including Vijay Meduri, for his conclusions that the switches contained all elements of the claims, including the required ports, at the time of manufacture.

Defendants additionally assert that the accused switches require configuration in order to be infringing. According to Defendants, the switches only have transparent ports when they are shipped or sold. Because all asserted claims require at least two transparent ports and one non-

transparent port, Defendants conclude there can be no infringement. Internet Machines responds that it presented substantial evidence that the switches contained all elements of the asserted claims.

At trial, Mr. Narad testified that all of the logic and structures for transparency and non-transparency—including the necessary registers—exist at each port of the accused switches at the time of manufacture. Mr. Narad presented evidence that the registers exist on the switches from their inception. Mr. Narad explained that the exposure of a subset of the registers at the ports determines their transparency. Thus, Mr. Narad concluded the accused switches require no configuration for infringement in part because the registers are always present on the switches.

Ultimately, substantial evidence supports the jury's infringement finding. The jury was free to consider all of the evidence and reject Defendants' non-infringement theory in favor of Internet Machines' infringement evidence. Internet Machines provided substantial evidence that the accused products, in light of the Court's claim construction, infringe without any additional configuration. Because the jury's infringement finding is supported by substantial evidence, judgment as a matter of law of non-infringement is unwarranted.

## B. Defendants' Renewed Motion for Judgment as a Matter of Law of No Induced Infringement (Doc. No. 541)

This motion is **DENIED**.

Defendants allege that Internet Machines did not carry its burden at trial for its induced infringement claim. Because infringement is a factual determination, a jury's finding is reviewed for substantial evidence. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009).

As set forth in the Patent Act, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "In order to prevail on an inducement claim, the

patentee must establish 'first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) (quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002)).

The intent element is satisfied where an infringer had "knowledge that the induced acts constitute patent infringement" or was willfully blind to any infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068–69 (2011). Intent can be proved by either direct or circumstantial evidence. *See Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005). Importantly, "[i]ntent is a factual determination particularly within the province of the trier of fact." *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1567 (Fed. Cir. 1988).

Here, substantial evidence supports the jury's verdict of induced infringement as to all Defendants. Internet Machines provided considerable evidence in support of direct infringement. Furthermore, Defendants had actual notice of the patents at least as early of the filing of this suit. Internet Machines presented sales data establishing that Defendants continued to sell the accused products to their customers through the time of trial. As a minimum, Defendants had knowledge of the asserted patents when they engaged in the post-filing sales. This is substantial evidence of inducement.

Internet Machines showed that Defendants encouraged the configuration and use of the infringing feature. Internet Machines provided evidence that the patented feature drove sales. According to Internet Machines, the patented feature was essential to the accused products. Internet Machines also established that Defendants advertised the patented feature and provided

customer support for its operation. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) ("Evidence of 'active steps . . . taken to encourage direct infringement,' such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use . . . .") (quoting *Oak Indus., Inc. v. Zenith Elecs. Corp.*, 697 F. Supp. 988, 992 (N.D. Ill. 1988); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *VirnetX Inc. v. Apple Inc.*, No. 6:10-cv-417, 2013 WL 692652, at *9 (E.D. Tex. Feb. 26, 2013) (upholding jury's inducement finding because the defendant instructed its customers to use the accused features in an infringing manner); *Advanceme Inc. v. RapidPay, LLC*, 509 F. Supp. 2d 593, 627 (E.D. Tex. 2007). Based upon all of the facts and evidence, the jury could reasonably infer the requisite intent for inducement.

In light of the evidence presented at trial, a reasonable jury could find that Defendants induced their customers to infringe. The Court will not disturb the jury's findings on this issue because it is supported by substantial evidence.

### C. Defendant PLX Technology, Inc.'s Renewed Motion for Judgment as a Matter of Law of No Willful Infringement (Doc. No. 542)

This motion is **GRANTED**.

PLX challenges the jury's finding of willful infringement. Specifically, PLX contends that Internet Machines did not present clear and convincing evidence that PLX willfully infringed the asserted patents.

Willful infringement requires a two-part test. First, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed.

Cir. 2007) (en banc). "The state of mind of the accused infringer is not relevant to this objective inquiry." *Id.* Second, "[i]f this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id*. The jury's determination of the subjective prong is reviewed for substantial evidence. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012).

Since the time of trial in this case, the Federal Circuit has clarified that the first prong—the objective prong—is determined as a matter of law. *Id.* ("[T]he ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law by the judge."). "Based on the record ultimately made in the infringement proceedings," the Court should determine "'whether a reasonable litigant could realistically expect' those defenses to succeed." *Id.* (quotations omitted).

In this case, the Court finds neither prong of the willfulness test satisfied.

### 1. *Willful Infringement—Objective Prong*

PLX argues that Internet Machines failed to present any evidence that PLX acted despite an objectively high likelihood that its actions amounted to infringement of a valid patent. The Court agrees.

In considering the fully developed record, the Court does not find the objective prong of the willfulness test satisfied. Based on the record developed during trial, PLX could have realistically expected its non-infringement and invalidity defenses to succeed.

Internet Machines argues that PLX's non-infringement position is not objectively reasonable as a matter of law. Internet Machines maintains that PLX's non-infringement theory was clearly deficient because Defendants' technical expert Dr. Martin Kaliski did not review any technical documents, and therefore, had no technical basis for his non-infringement opinions. Although Internet Machines attacks the foundation for PLX's position, this has no impact on the reasonableness of PLX's non-infringement argument. PLX argued that its switches required configuration to be infringing. The Court does not find this to be an unreasonable position.

Internet Machines additionally contends that PLX's invalidity defense is objectively unreasonable as a matter of law. According to Internet Machines, PLX's anticipation argument and PLX's prior invention theories were objectively meritless.

Regarding anticipation, the patent examiner initially rejected the claims in light of PLX's webcast. To predate the webcast, Internet Machines filed an inventor declaration and supporting documentation. At trial, PLX challenged the adequacy of the inventor's declaration to predate the webcast. PLX even introduced evidence that the patent examiner did not adequately review the declaration. PLX also attacked the provisional application as insufficient for priority purposes because it lacked an adequate disclosure of the later-claimed invention. Although PLX's anticipation arguments were ultimately unavailing, they were objectively reasonable.

Pertaining to prior invention, PLX argued that it first conceived of the invention and diligently reduced the invention to practice. Accordingly, PLX concluded the patents were invalid under 35 U.S.C. § 102(g). Internet Machines responds that PLX's prior invention claim is untenable. Yet during trial, Internet Machines' technical expert Mr. Narad testified that PLX's Chief Scientist Jack Regula first conceived the claimed invention. Although Internet Machines

challenges the context of Mr. Narad's testimony, it created an objectively reasonable basis for PLX's invalidity argument.

Internet Machines also refutes PLX's diligent reduction to practice argument as objectively unreasonable. However, PLX corroborated diligence with engineering presentations, internal emails, press releases, and the webcast. Because PLX did not produce voluminous amounts of supporting technical documents, Internet Machines discredits PLX's reasonable expectation of success of this theory. Even though Internet Machines takes issue with the types of corroborating evidence produced by PLX, PLX produced credible evidence to support its diligence in reducing the invention to practice.

On balance, PLX presented in good faith credible and objectively reasonable non-infringement and invalidity arguments. As a matter of law, there was not an objectively high likelihood that PLX's actions constituted infringement of a valid patent. *See Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011) ("'[W]here an accused infringer relies on a reasonable defense to a charge of infringement,' the objective prong tends not to be met." (quoting *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305,1319 (Fed. Cir. 2010)). Internet Machines has not proven by clear and convincing evidence the threshold objective prong of *Seagate*.

### 2.   *Willful Infringement—Subjective Prong*

Furthermore, the record contains insufficient evidence to support the jury's subjective willfulness finding. *Bard*, 682 F.3d at 1008 ("If, in view of the facts, the asserted defenses were not reasonable, only then can the jury's subjective willfulness finding be reviewed for substantial evidence."). Under the subjective prong, Internet Machines needed to establish by clear and convincing evidence that PLX knew or should have known of the risk that its conduct infringed

Internet Machines' patents. *See Seagate*, 497 F.3d at 1371. The Court applies a subjective evidence standard of review. *Bard*, 682 F.3d at 1008.

The parties differentiate between pre-filing and post-filing conduct. The Court finds that the record as a whole is insufficient to establish the subjective prong as to pre-filing conduct.[3]

At trial, Internet Machines presented no evidence that prior to filing of this action, PLX knew or should have known that its actions constituted infringement. Frank Knuettel, one of the owners of Internet Machines, testified that his company never contacted Defendants regarding any infringement prior to initiating this suit. Internet Machines does not contest this point. No evidence supports the claim that PLX had any knowledge from any other source that the patents existed.[4] This is not a case where PLX copied the technology from another or disregarded information that another owned the technology. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336 (Fed. Cir. 2009) (explaining that "evidence of copying in a case of direct infringement is relevant only to *Seagate*'s second prong, as it may show what the accused infringer knew or should have known about the likelihood of its infringement").

Lastly, Internet Machines argues that PLX attempted to conceal its knowledge of downstream use and configuration by its customers. Even if true, knowledge of downstream use alone is not equivalent to knowledge that the downstream use is infringing. Internet Machines provided no evidence to show that PLX knew or should have known that the downstream use was infringing conduct.

---

[3] PLX's post-filing knowledge is protected by the reasonable defenses it presented in good faith.
[4] The Court maintains grave concerns about Internet Machines' compliance with the pleading requirements. Internet Machines' original complaint clearly contains allegations of willful infringement. *See Seagate*, 497 F.3d at 1374 ("[A] willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct."). But Internet Machines alleged no facts to support pre-filing willful infringement by PLX. *See id.* ("[W]hen a complaint is filed, a patentee must have a good faith basis for alleging willful infringement.").

Internet Machines failed to present any evidence, let alone substantial evidence, that PLX knew or should have that its pre-filing conduct amounted to infringement. In total, the jury's finding that PLX willfully infringed the asserted patents is unsupported. Accordingly, PLX's motion for judgment as a matter of law of no willful infringement is meritorious and should be granted. The Court directs the entry of judgment as a matter of law that PLX did not willfully infringe either the '552 or '532 patents.

## D. **Defendants' Renewed Motion for Judgment as a Matter of Law of Invalidity (Doc. No. 540)**

This motion is **DENIED**.

Defendants present several invalidity theories, including prior invention, inadequate disclosure, inadequate inventor declaration under 37 C.F.R. 1.131, and obviousness. The Court disagrees with Defendants' arguments and addresses each in turn.

### 1. *Prior Invention*

Defendants' first argue that PLX is a prior inventor of the asserted technology under 35 U.S.C. § 102(g)(2). Under § 102(g)(2), PLX must show by clear and convincing evidence its prior invention by establishing that "(1) it reduced its invention to practice first . . . or (2) it was the first party to conceive of the invention and then exercised reasonable diligence in reducing that invention to practice." *Mycogen Plant Sci. v. Monsanto Co.*, 243 F.3d 1316, 1332 (Fed. Cir. 2001). "[T]he test for conception is whether the inventor had an idea what was definite and permanent enough that one skilled in the art could understand the invention . . . ." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). "In order to establish reduction to practice, the prior inventor must have (1) constructed an embodiment or performed a process that met all the claim limitations and (2) determined that the invention would work for its

intended purpose." *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP*, 661 F.3d 1378, 1383 (Fed. Cir. 2011).

The parties dispute whether PLX's Chief Scientist Jack Regula first conceived of the claimed invention. The parties further dispute whether PLX engineers diligently reduced the invention to practice after Mr. Regula's alleged conception.

PLX argues that at trial it presented uncontroverted evidence regarding its prior invention. Specifically, Mr. Regula testified and presented evidence of his conception of the invention by at least April 21, 2003. PLX further notes that Internet Machines' technical expert Mr. Narad agreed that PLX first conceived the invention. Additionally, PLX employees Mr. Meduri and Larry Chisvin testified that Mr. Regula and at least 30 PLX engineers worked continuously and diligently and reduced the invention to practice by March 2004. PLX states that it presented a number of documents at trial in support of its position. *See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) (explaining that it is well-established law that a claim of prior inventorship must be supported by corroborating evidence). According to PLX, the documents include engineering presentations, white papers, webcasts, and press releases. Because Internet Machines claims an invention date of August 25, 2003, or at the latest by the filing of the provisional application on November 18, 2003, PLX concludes it was the first to invent.

Regarding diligence, Mr. Meduri admitted during trial to a several month delay in the development process. *See Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1312–13 (Fed. Cir. 2011) ("Merely asserting diligence is not enough; a party must 'account for the entire period during which diligence is required.'" (quoting *Gould v. Schawlow*, 363 F.2d 908, 919 (C.C.P.A. 1966))). Furthermore, Mr. Meduri testified that diligence in reducing the invention to

practice would have generated a mass of engineering documents, including architecture specifications and microarchitecture specifications. But Mr. Meduri confirmed that none of these documents were brought to trial. *See Kridl v. McCormick*, 105 F.3d 1446, 1450 (Fed. Cir. 1997) (reasoning that the purpose behind requiring corroborating evidence "is to prevent fraud, by providing independent confirmation of the inventor's testimony"). Importantly, Internet Machines elicited testimony discrediting PLX's remaining documents establishing diligence.

Upon a review of the entirety of the record, the Court finds that substantial evidence supports the jury's finding that PLX was not the first to invent as defined by § 102(g). Reasonable and impartial minds could have reached such a verdict. *See Argo v. Woods*, 399 F. App'x 1, 3 (5th Cir. 2010) (per curiam) (explaining that the standard for determining a "Rule 50(b) motion for judgment as a matter of law following a jury verdict is whether 'the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict'" (quoting *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004))). The Court will not disturb the jury's verdict on this issue because it is supported by substantial evidence.

### 2. *Inadequate Disclosure*

Defendants also argue that the November 18, 2003 provisional application is inadequate to support a valid claim of priority for the asserted patents. Specifically, Defendants contend the provisional application lacks an adequate written description, requires a drawing, and is not enabling. Defendants reason that without a claim of priority to the provisional application, the constructive reduction to practice occurred on November 18, 2004. Therefore, Defendants believe the asserted patents are anticipated by prior invention and prior printed publication.

Specifically, the patents are anticipated by PLX's prior invention and PLX's August 26, 2003 webcast.

The written description requirement under 25 U.S.C. § 112 requires that a patent "must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1989); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Therefore, "the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad*, 598 F.3d at 1351. "[T]he level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Id.*

Defendants allege that the provisional application inadequately discloses the claimed invention. Defendants claim that the disclosure in the provisional application does not adequately demonstrate possession of the claimed invention. To the contrary, Internet Machines' technical expert Mr. Narad provided extensive testimony detailing how the provisional application supports each asserted claim. Mr. Narad mapped the claim language directly to the provisional application. Accordingly, Internet Machines provided ample evidence and testimony at trial that the written description of the provisional application reasonably conveyed to those skilled in the art that Internet Machines had possession of the claimed invention. Thus, substantial evidence supports the jury's verdict on this issue.

The requirement for drawings under 35 U.S.C. § 113 states that an "applicant shall furnish a drawing where necessary for the understanding of the subject matter sought to be patented." Defendants contend the provisional application is insufficient as a matter of law

because the inventors failed to include any drawings. Defendants' technical expert Dr. Kaliski testified that a person of ordinary skill in the art would require drawings to understand the claimed invention. Because the provisional application lacked a drawing, Defendants believe it is insufficient as a matter of law to support a claim of priority.

The law only requires a drawing "where necessary." 35 U.S.C. § 113. The lack of a drawing does not automatically defeat an application. Mr. Narad contradicted Dr. Kaliski's testimony and explained at trial that an ordinary person of skill in the art would understand the invention without a drawing. A reasonable jury was free to weigh the substantial evidence provided by Internet Machines and find that drawings were not necessary as part of the provisional application.

Defendants additionally argue that the provisional application is inadequate for claiming priority because it does not enable one of ordinary skill in the art to practice the claimed invention. Enablement under 35 U.S.C. § 112 requires that "the specification must enable one of ordinary skill in the art to practice the *claimed* invention without undue experimentation." *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1355 (Fed. Cir. 2012). "Although the ultimate determination of whether one skilled in the art could make and use the claimed invention without undue experimentation is a legal one, it is based on underlying findings of fact." *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1337 (Fed. Cir. 2005); *see also Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1149 (Fed. Cir. 2004) (reviewing "factual underpinnings of enablement for substantial evidence").

Defendants' technical expert Dr. Kaliski testified that the provisional application was not enabling. Yet, Dr. Kaliski did not provide extensive or thorough analysis of this issue. Rather than address the factors for addressing undue experimentation, he analogized that had one of his college students prepared such a disclosure, it would have received a poor grade. *See Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1378 (Fed. Cir. 2009) (addressing factors for determining whether a disclosure would require undue experimentation). Internet Machines' technical expert Mr. Narad directly contradicted Dr. Kaliski's testimony. Internet Machines provided sufficient evidence to rebut Defendants' position. The jury was free to weigh the evidence and determine that Defendants did not carry their burden on this issue. Because substantial evidence supports the jury's finding on enablement, the Court finds the verdict supported.

Substantial evidence supports the jury's finding that the provisional application adequately discloses the claimed invention. Consequently, the provisional application supports the earlier priority date for the asserted patents. Therefore, Defendants' arguments concerning anticipation due to prior actual invention and prior printed publication are without merit.

### 3.   *Inadequate Rule 1.131 Declaration*

Defendants maintain that Internet Machines failed to provide corroborating evidence for the inventor's Rule 1.131 declaration. Defendants assert that this renders the declaration legally insufficient. Since Internet Machines used the allegedly deficient declaration to overcome a prior art reference during prosecution, Defendants argue that the patents are anticipated under 35 U.S.C. § 102(a) by a prior publication, specifically PLX's August 26, 2003 webcast.

During patent prosecution, inventors often execute Rule 1.131 declarations to antedate a prior art reference. In doing so, the inventor "must present evidence of the actual reduction to

practice of the invention prior to the effective date of the reference." *In re NTP, Inc.*, 654 F.3d 1279, 1291 (Fed. Cir. 2011). "An inventor cannot rely on uncorroborated testimony to establish a prior invention date. It has long been the case that an inventor's allegations of earlier invention alone are insufficient—an alleged date of invention must be corroborated." *Id.*

Here, Internet Machines provided substantial evidence to support the inventor's Rule 1.131 declaration. As evidence, Internet Machines provided the documents it submitted to the patent examiner to establish an earlier priority date. This evidence includes technical documents and e-mail exchanges between engineers. Furthermore, Internet Machines' technical expert Mr. Narad testified that upon review of these documents, he believed that the inventors adequately corroborated their declarations and established an earlier priority date. Accordingly, Internet Machines provided substantial evidence to support the jury's verdict regarding corroboration of the inventors Rule 1.131 declaration.

### 4. Obviousness

Lastly, Defendants challenge the claimed invention as obvious. Defendants contend that non-transparency and PCI Express switches were both well known by persons of ordinary skill in the art at the time of the invention. Defendants argue that all of the claim elements were known at the time of the invention and that their combination is not novel or inventive. PLX's chief scientist Jack Regula testified that he did not think non-transparency was patentable because it had already been accomplished. According to Defendants, Dr. Kaliski further explained that it would have been obvious to one of ordinary skill in the art to combine non-transparent ports and PCI Express switches.

Obviousness is a legal determination based upon underlying factual findings. *Soverain Software LLC v. Newegg Inc.*, 705 F.3d 1333, 1336 (Fed. Cir. 2013). The factual findings are

based upon several factors, including "(1) the scope and content of the prior art, (2) the difference between the prior art and the claimed invention, (3) the level of ordinary skill in the field of the invention, and (4) any relevant objective considerations." *Id.*

In this case, reasonable and impartial minds could have reached a verdict of non-obviousness. Substantial facts support the jury's verdict. Based upon Defendants' limited and cursory testimony, a reasonable jury could have determined that Defendants did not establish by clear and convincing evidence that the invention would have been obvious to one of ordinary skill in the art at the time of the invention.

During trial, Defendants did not perform an element-by-element analysis of the claims for obviousness purposes. Rather than specifically identify which elements or combination of elements would have been obvious, Defendants only provided general testimony on this issue. Similarly, Internet Machines did not provide abundant testimony on non-obviousness. In reviewing the entirety of the record and in drawing all reasonable references in the non-moving party's favor, substantial evidence supports the jury's verdict. The jury was free to weigh the testimony and conclude that Defendants failed to show obviousness.

### E.  Defendants' Motion for New Trial Based on Jury Tampering (Doc. No. 544)

This motion is **DENIED**.

Defendants contend a new trial is justified due to alleged jury tampering during trial. In rendering a verdict, "jurors must rely on only the evidence and law presented in an open court room." *Oliver v. Quarterman*, 541 F.3d 329, 340 (5th Cir. 2008). The Supreme Court clearly "prohibits jurors from being subjected to 'private communication, contact, or tampering' and considers any such external influences presumptively prejudicial." *Id.* at 335 (quoting *Remmer v. United States*, 347 U.S. 227, 229 (1954)). "A juror is exposed to an external influence when the

juror reads information not admitted into evidence, such as a newspaper article about the case, or hears prejudicial statements from others . . . ." *Id.* at 336. Accordingly, "[j]uror exposure to extraneous information must be examined on case-by-case basis to determine if there is a reasonable probability of prejudice." *Sheehan v. Whitley*, No. 96-30008, 110 F.3d 794, at *11 (5th Cir. Mar. 11, 1997).

Here, Defendants contend a new trial is warranted because Internet Machines inadvertently exposed the jurors to extraneous and prejudicial material.

Prior to the start of the third morning of trial, the Court indicated to the parties that there was a matter that needed to be addressed before testimony resumed. The Court cleared the courtroom, but allowed counsel and the parties to remain. The Court called law clerk Ravi Deol to the witness stand for questioning. The Court placed Mr. Deol under oath for his testimony.

The Court questioned Mr. Deol about his observations in preparing the jury room that morning. Mr. Deol explained that he and court reporter Jan Mason prepared the jury room as part of their normal daily trial procedure. This procedure occurs prior to the arrival of any juror and includes filling the jury's water pitcher and making fresh coffee. Mr. Deol testified that on this particular morning, he noticed a stack of papers in the middle of the jury conference table under a tissue box. Mr. Deol observed that a jury strike list was one of the papers partially sticking out from the pile. This was unusual because the parties are required to return these lists to the Court upon the completion of jury selection.

Mr. Deol maintained the documents as discovered and presented them in court as he found them in the jury room. The Court asked a representative from each side to approach the witness to observe the documents. Lead trial counsel for Internet Machines and PLX approached. The Court then questioned the witness as to the contents of the documents in the order they were

arranged. Mr. Deol testified that the documents contained information ranging from witness testimony outlines to handwritten notes about the jurors. Plaintiff's counsel assumed responsibility for the documents. Importantly, Mr. Deol testified that "[b]ased on where [the documents] were sitting and the location of the documents, there's no indication that they had been in front of any juror or that any juror had looked at them" (Morning Trial Tr. 17:4–7, Feb. 24, 2012, Doc. No. 518). The Court permitted counsel to ask Mr. Deol or Ms. Mason any additional questions. Both sides declined.

During jury selection, the Court permitted Internet Machines' counsel to use the jury room to discuss their preemptory strikes. Internet Machines' counsel acknowledges that it left approximately 36 pages of extraneous material in the jury room after discussing its strikes.[5] These documents remained in the jury room until their discovery by Mr. Deol.

Upon the completion of Mr. Deol's testimony, Defendants moved for a new trial based upon jury tampering. Given the alleged prejudicial nature of the documents, Defendants argued that the notes by Internet Machines' counsel tainted the jury. In response, the Court called the jury into the courtroom and questioned them in front of the parties and counsel. The Court asked the jury whether any of them looked at any of the documents. Each juror indicated that they had not read any of the documents. The jurors did indicate that they collected the papers and placed them in the middle of the table. Since none of the jurors reviewed any of the documents, the Court denied Defendants' motion and resumed with trial.

Having reviewed the parties additional briefing on this issue, the Court finds no basis to depart from its original ruling. When the Court first denied Defendants' motion, neither party complained of the Court's procedure in resolving this issue. Instead, the Court's "questioning

---

[5] At one point, Internet Machines' lead counsel suggested that perhaps a cleaning person relocated the documents from the courtroom to the jury room. The Court finds this assertion completed unfounded and entirely unsupported.

reflected a careful attempt to draw the balance required by Rule 606(b), inquiring into objective events that might constitute extraneous influences on the jury, while avoiding any examination of the jury's subjective deliberation process." *Bolton v. Tesoro Petroleum Corp.*, 871 F.2d 1266, 1275 (5th Cir. 1989); *see also* Fed. R. Evid. 606(b).

Moreover, there is no reasonable possibility of prejudice in this case. Although the documents remained in the jury room for the first several days of trial, no juror ever looked at any of the material. Without having read the documents, no jurors could have been prejudiced. Even assuming the documents contained extraneous prejudicial information, they could not influence the jury based on the facts presented. Accordingly, the Court denies Defendants' request for new trial based on jury tampering.

### F.  **Defendants' Motion for New Trial Under *O2 Micro* (Doc. No. 545)**

This motion is **DENIED**.

Defendants contend that a new trial is necessary because the jury was impermissibly required to determine claim scope. Defendants argue that the parties presented competing claim constructions at trial. Specifically, Defendants allege that Internet Machines improperly argued that the non-transparent port limitation is satisfied where there are only shared address domains. The Court disagrees.

"When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Here, the Court does not find that Internet Machines presented a construction for the non-transparent port limitation in contradiction to the Court's construction. The Court unambiguously construed "non-transparent port" and "non-transparent interface" in its

claim construction opinion. The Court provided the jury a copy of its constructions with the jury charge and instructed the jury to apply those constructions in its deliberations.

In the briefing, Defendants mischaracterize the trial testimony Mr. Narad provided on this issue. Mr. Narad adhered to the Court's claim constructions in presenting his technical opinions at trial. Defendants' arguments are more appropriately addressed as non-infringement theories rather than issues requiring resolution under *O2 Micro*. *See supra* § III.A.

Defendants additionally argue a new trial is warranted because the Court improperly instructed the jury that "so much of your job is going to be claim interpretation and so I'm going to give you some direction on that, certain levels of interpreting the claims and in what context" (Morning Trial Tr. 18:7–10, Feb, 28, 2012, Doc. No. 522). The Court finds Defendants' argument on this point meritless. Defendants take the Court's comments out of context. The Court was not instructing the jury to determine the scope of claim language. Rather, the Court was merely explaining that the jury would necessarily have to apply the Court's claim construction as to the accused products. Shortly after this remark, the Court instructed the jury that it had interpreted the claim language and that any language not interpreted should be given its ordinary meaning as understood by one of ordinary skill in the art. Thus, the Court does not find that the jury was instructed to determine the scope of any claim language as suggested by Defendants.

Accordingly, the Court denies Defendants motion for new trial pursuant to *O2 Micro*.

## G. Defendants' Renewed Motion for Judgment as a Matter of Law on Damages (Doc. No. 539)

This motion is **DENIED**.

Defendants present two separate grounds for judgment as a matter of law on damages. First, Defendants contend that Internet Machines' damages expert Walter Bratic erroneously

applied the entire market value rule in determining a royalty base. Second, Defendants argue that that Mr. Bratic's reliance on certain licenses to support his 6% royalty rate is improper. The Court disagrees on both grounds.

"[I]t is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'" *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (quoting *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283, 287–88 (N.D.N.Y. 2009) (Rader, C.J.)). "The entire market value rule is a narrow exception to this general rule." *Id.*

Here, Mr. Bratic determined the royalty base of $16.9 million from the domestic sales of certain infringing PCI Express switches. As shown by the evidence, the switches are the smallest salable patent-practicing unit. Even though the switches are incorporated into larger computing systems, the use of switch sales as the royalty base is the smallest possible economically sound measure of damages. The use of switch sales as a royalty base is appropriate because it is "the market most aligned with the claimed invention." *Cornell Univ.*, 609 F. Supp. 2d at 287.

Defendants argue that the switches contain non-patented features, and therefore damages must be further apportioned or the entire market value rule applied. Because Mr. Bratic used the smallest salable unit as his royalty base, additional apportionment is unwarranted and the narrow exception of the entire market value rule is inapplicable. *See id.* (explaining that processers used in servers were the smallest salable patent-practicing units even though the patent covered only one component of the processors). For practical economic purposes, any further apportionment of value within a switch would be entirely speculative and arbitrary. *See Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987) ("The determination of a

damage award is not an exact science, and the amount need not be proven with unerring precision." (quotations omitted)).

Even if the entire market value rule were applicable, the Court finds substantial evidence to show that the patented invention drove customer demand for the product. Ultimately, the Court finds there was substantial evidence to support Mr. Bratic's royalty base determination.

Defendants also argue that Mr. Bratic's 6% royalty rate is based upon improperly considered licenses. Defendants contend that the licenses covered technology not addressed by the patents. Defendants further assert that the license agreements are between parties unrelated to this litigation, and therefore, should not have been considered by Mr. Bratic in establishing a starting point for his royalty rate.

It is a general principal that "[a]ny evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (per curiam); *see also* 35 U.S.C. § 284. "The trial court should not rely on unrelated licenses to increase the reasonable royalty rate above rates more clearly linked to the economic demand for the claimed technology." *ResQNet.com*, 594 F.3d at 872–73; *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317–18 (Fed. Cir. 2011).

In this case, the Court finds that Mr. Bratic properly relied upon the disputed license agreements. The testimony and evidence established that the licenses covered the same general field of technology at issue in this case: the interconnectivity among devices in a computer system. The specific technology at issue in the licenses was split bridge technology while the patented technology in the instant case dealt with transparent and non-transparent ports. Although the licenses did not directly cover the patented technology, they are sufficiently

comparable to the technology at issue in this case. These license agreements are commensurate with the technology that Defendants have appropriated in this case. Furthermore, the license agreements provide valuable and relevant information about the value of the patented technology. Accordingly, Mr. Bratic's reliance on these licensees for establishing a reasonable royalty was proper since they were "clearly linked to the economic demand for the claimed technology." *ResQNet.com*, 594 F.3d at 873; s*ee generally Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (addressing "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions" as a factor in determining a reasonable royalty).

Defendants also protest the use of the disputed license agreements because they confer greater rights than just patent licensing. Although this is correct, Mr. Bratic only considered the license agreements as a single data point in his analysis. Mr. Bratic addressed each of the *Georgia-Pacific* factors in reaching his damages opinion. *See id.* Because the licensed technology has a discernible link with the claimed invention, the Court finds that their application in this case is not speculative. Therefore, Mr. Bratic's reliance on these licensees for establishing a reasonable royalty was justifiable. In sum, the Court finds there was a sufficient evidentiary basis for Mr. Bratic's damages opinion and resulting royalty determination.

## H. **Defendants' Motion for Remittitur or, alternatively, New Trial on Damages (Doc. No. 546)**

This motion is **DENIED**.

Defendants allege the jury's damages award is excessive and unsupported by sound economic data. Defendants again argue that Internet Machines improperly relied upon the entire market value rule and that Internet Machine's royalty rate is excessive. Accordingly, Defendants

request the Court to remit the damages to allow Internet Machines to elect a lower damages amount or a new trial on damages.

"There is a strong presumption in favor of affirming a jury award of damages." *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). Remitter is appropriate only when damages are "clearly excessive." *Id.*

As previously noted, Internet Machines presented an acceptable damages model at trial. Internet Machines based its damages theory on the smallest salable patent-practicing unit and not on the entire market value rule. *See LaserDynamics*, 694 F.3d at 67 ("[I]t is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'" (quoting *Cornell Univ.*, 609 F. Supp. 2d at 287–88)). Furthermore, Internet Machines adequately tied its royalty base and royalty rate to the patented technology. This is not a situation where the damages requested were entirely speculative or arbitrary. Rather, as highlighted earlier, the jury's damages award is supported by substantial evidence.

In light of the substantial evidence presented at trial, the Court finds no support for Defendants' claim that the jury's damages verdict was clearly excessive. Thus, Defendants' motion for remittitur or a new trial on damages is unavailing.

## I.   **Plaintiff's Motion for an Exceptional Case Finding, for an Award of Attorneys' Fees and Expert Costs, and for Enhanced Damages (Doc. No. 549)**

This motion is **DENIED**.

Internet Machines seeks a declaration that this is an exceptional case under 35 U.S.C. § 285. Thus, Internet Machines believes it is entitled to an award of attorneys' fees and expert costs. The jury awarded damages totaling $1,018,529, and Internet Machines now seeks and additional $1,863,211 in attorneys' fees. Internet Machines also seeks $150,000 in attorneys'

fees if Defendants choose to appeal this matter. Internet Machines also contends it is entitled to expert witness costs in the amount of $451,300.34.

Internet Machines additionally asserts that it is entitled to enhanced damages against PLX pursuant to 35 U.S.C. § 284. Internet Machines requests the Court treble the damages assessed against PLX from $980,340.20 to $2,941,020.60.

The Court disagrees with Internet Machines on all accounts.

### 1. Exceptional Case: Attorneys' Fees

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Court conducts a two-prong test in determining whether a case qualifies as exceptional under § 285. "First, the court must determine whether the prevailing party has proved by clear and convincing evidence that the case is exceptional." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012). "If the district court finds that the case is exceptional, it must then determine whether an award of attorney fees is justified." *Id.* at 916.

Cases qualifying as exceptional under § 285 "usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in producing the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321–22 (Fed. Cir. 2006). "However, a finding of willful infringement does not mandate that damages be increased or that attorneys fees be awarded." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1573 (Fed. Cir. 1996).

Here, Internet Machines has not demonstrated by clear and convincing evidence that this case is exceptional. First, Internet Machines maintains that this case qualifies as exceptional due

to the jury's verdict finding PLX willfully infringed the patents. As previously addressed, the Court finds that a reasonable jury could not have had a legally sufficient evidentiary basis to find for Internet Machines on this issue. Because the jury's willful infringement verdict is unsupported by the evidence, this issue is insufficient to make this case exceptional.

Internet Machines additionally contends that PLX's litigation misconduct warrants an exceptional case finding. According to the Internet Machines, PLX purposefully concealed its knowledge regarding the configuration and use of non-transparent ports by PLX's downstream customers.

Approximately one month before trial, the Court partially granted Internet Machines' motion to compel PLX to produce evidence that was allegedly wrongfully concealed during discovery. Based upon the resulting production, Internet Machines concluded that PLX attempted to conceal its knowledge of any downstream use of non-transparent ports. The Court disagreed and stated that although the produced documentation was relevant, it was unconvinced that PLX concealed evidence or provided false testimony (Doc. No. 416).

Internet Machines continues to assert its original argument regarding discovery abuses by PLX. Specifically, Internet Machines argues that the disclosure resulting from the motion to compel shows that PLX knew its customers used non-transparent ports. Internet Machines maintains this is in direct contradiction to PLX's statements that it had no knowledge of how the accused switches are used by end consumers.

PLX responds that it had an understanding what customers were trying to accomplish with the switches but that it was unaware whether specific end products or devices ultimately contained the switches in the accused configuration. Downstream customers support this assertion by stating that they have policies to provide PLX with as little information as possible

because PLX supplies market competitors with the switches. Although a customer might discuss a specific configuration with PLX, there is no indication PLX ever knew if that configuration made it to the end product. This position is entirely consistent with the statements PLX has provided throughout this litigation.

PLX also presents evidence showing that its earlier disclosures contained identical information in comparison to the compelled production. This evidence bolsters PLX's position that it worked with customers regarding the use of non-transparent ports but that it remained unaware of the actual use of the switches. Therefore, the Court finds no basis to depart from its earlier ruling that PLX has not concealed evidence or provided false testimony. Internet Machines fails to satisfy its burden on this issue. *See MarcTec*, 664 F.3d at 919 ("Litigation misconduct typically 'involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicate proceedings.'" (quoting *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 549 (Fed. Cir. 2011)).

Internet Machines also presents several other grounds to justify an exceptional case finding. First, Internet Machines argues that PLX filed a frivolous harassment suit against Internet Machines manager Frank Knuettel. PLX originally filed a tortious interference with a membership agreement claim against Mr. Knuettel in Colorado which was subsequently transferred to this Court. PLX maintains that suit involves claims completely unrelated to this case and that none of the issues decided here would be dispositive in that litigation. Likewise, during the pretrial conference in this case, Internet Machines' counsel clearly indicated to the Court that the tortious interference action was a completely different lawsuit. In this specific instance, the Court does not classify the separately filed tortious interference suit as vexatious or unjustified litigation. The Court is unconvinced this supports an exceptional case finding.

Internet Machines additionally contends PLX engaged in discovery misconduct in relation to PLX's § 102(g) prior invention invalidity argument. During trial, Internet Machines elicited testimony from PLX's Vice President of Engineering Mr. Meduri that PLX generated a large quantity of engineering documents while reducing the invention to practice. Mr. Meduri also stated that none of the documents were brought to trial. Accordingly, Internet Machines claims this testimony was either deceitful because PLX does not actually have these documents or that PLX violated the Court's discovery order mandating production of all relevant evidence. PLX contends the voluminous engineering documents are duplicative of the documents in evidence already showing reduction to practice.

Internet Machines alleges discovery misconduct on PLX's behalf without having reviewed the alleged documents. Internet Machines provides no evidence to contradict PLX's assertion that the documents are duplicative of already produced material. Importantly, Internet Machines raised this issue with Mr. Meduri into order to undercut PLX's prior invention argument.

From the trial testimony, it appears that Internet Machines was fully aware these engineering documents existed. But there is no evidence that Internet Machines ever requested these documents from PLX after realizing their existence. Additionally, Internet Machines never moved for the Court to compel any engineering documents even after it became aware of PLX's § 102(g) argument. The Court will not now allow Internet Machines to benefit from the nonproduction of these documents when they had the ability to timely seek them. The Court does not find that this alleged deficient production is clear and convincing proof that this case is exceptional.

Overall, Internet Machines has not established by clear and convincing evidence that this is an exceptional case under § 285. Neither the jury's unsupported willful infringement verdict nor PLX's alleged litigation misconduct adequately supports an exceptional case finding. Additionally, PLX's tortious interference suit and alleged deficient production are likewise insufficient to establish this case as exceptional. Because Internet Machines fails to meet the first part of the exceptional case test, the Court need not address the subsequent prong. Accordingly, the Court concludes that attorneys' fees under § 285 are unwarranted.

### 2. *Exceptional Case: Expert Costs*

In addition to attorneys' fees, Internet Machines seeks to recover $451,300.34 in expert witness expenses. It is within the Court's "inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008). "Use of this inherent authority is reserved for cases where the district court makes a finding of fraud or bad faith whereby the very temple of justice has been defiled." *MarcTec*, 664 F.3d at 921 (quotations omitted). "Accordingly, not every case that qualifies as exceptional under § 285 will also qualify for sanctions under the court's inherent power." *Id.*

Internet Machines contends it is entitled to expert costs in order to be made whole. Internet Machines also alleges that its expert had to issue additional reports after the Court ordered PLX to produce additional documents. Furthermore, Internet Machines alleges that its technical expert Mr. Narad underwent an additional deposition after issuing his supplemental report. Internet Machines believes these factors justify an award of expert witness expenses. The Court does not find Internet Machines' arguments persuasive.

As set forth above, the record does not support an exceptional case finding under § 285. Moreover, there is no evidence that this case involves fraud or bad faith. In exercising its discretion, the Court declines to award Internet Machines expert witness expenses.

### 3.  *Enhanced Damages*

Internet Machines argues it is entitled to trebled damages based upon the jury's willful infringement verdict. Pursuant to 35 U.S.C. § 284, "the court may increase the damages up to three times the amount found or assessed" by the jury. But "[a] finding of willful infringement is a prerequisite to the award of enhanced damages." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 858 (Fed. Cir. 2010). As previously discussed, the Court does not find the jury's willfulness verdict supported by legally sufficient evidentiary basis. *See supra* § III.C. Because the Court finds no willful infringement, there can be no enhanced damages. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc). ("[A] finding of willfulness does not require an award of enhanced damages; it merely permits it.").

### J.  Plaintiff's Motion for an Award of Post-Verdict Royalties (Doc. No. 550)

This motion is **GRANTED IN PART**.

Internet Machines seeks an award of a post-verdict running royalty in the amount of 10% of the total sales for any infringing switch. At trial, the jury awarded damages consistent with the damages model presented by Internet Machines' damages expert Mr. Bratic. Mr. Bratic testified to a 6% royalty rate. Internet Machines now argues that based upon the parties' changed circumstances, an increased post-verdict royalty rate is warranted. Defendants reiterate their objections to Internet Machines' damages model and presents an alternative post-verdict running royalty amount. Defendants argue that the damages model its expert presented at trial more accurately reflects future damages. Accordingly, Defendants state that ongoing running royalties

should equal the number of switches sold, times a royalty rate of $0.26, times 0.05 to appropriately apportion the damages to the infringing feature.

Although the parties do not distinguish between post-verdict damages and post-judgment damages, the Court finds it prudent to address them independently.

### 1. Post-Verdict Damages

Internet Machines requests an increased running royalty for all post-verdict sales. Internet Machines argues this in part because of the jury's willful infringement finding against PLX. But as previously addressed, the Court vacates the jury's willful infringement verdict as unsupported by substantial evidence. Thus, the Court does not find that an increased royalty rate for post-verdict, prejudgment damages based upon willful infringement is unjustified.

The Court finds the royalty rate pursuant to the jury's verdict as the appropriate starting point. *See Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 645–46 (E.D. Tex. 2011). Neither party presents any evidence relevant to this time period that would suggest increasing or decreasing this rate. Accordingly, the Court finds that a running royalty in the amount of 6% of the total sales of any infringing switch is appropriate to assess post-verdict, prejudgment damages in this case.

### 2. Post-Judgment Damages

"Under some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate." *Paice LLC v Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007). In awarding post-judgment damages, "the court must consider the change in the legal relationship between the parties to avoid incentivizing defendants 'to fight each patent infringement case to the bitter end because without consideration of the changed legal status, there is essentially no downside to losing.'" *Fractus, S.A. v. Samsung Elecs. Co., Ltd.*, 876 F.

Supp. 2d 802, 855 (E.D. Tex. 2012) (quoting *Paice, LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 628 (E.D. Tex. 2009)). Accordingly, "pre-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other factors." *Paice LLC.*, 504 F.3d at 1317 (Rader, C.J., concurring). Importantly, courts must "provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In instances where a court finds a permanent injunction unfounded, the court may want "to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty. Should the parties fail to come to an agreement, the district court could step in to assess a reasonable royalty in light of the ongoing infringement." *Paice LLC*, 504 F.3d at 1315.

After the jury rendered its verdict in this case, the Court instructed the parties to conduct a mediation "[i]n an effort to reach a business solution in a timely and efficient manner" (Doc. No. 509). The mediation resulted in an impasse. Since the parties were unable to resolve the issue of ongoing royalties themselves, the Court finds it proper to now address this issue.

Although the Federal Circuit has not settled on the exact procedure for determining post-judgment damages, the Court finds the procedure outlined in *Mondis* instructive. *See Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 646 (E.D. Tex. 2011). The appropriate starting point for determining post-judgment damages lies with the jury's verdict. *Id.* The Court will then address any changed circumstances in light of the *Georgia-Pacific* factors. *Id.* Thereafter, the Court determines whether the continued infringement is willful and calls for enhanced damages. *Id.*

Here, the jury awarded pre-verdict damages as 6% of total sales of infringing switches. The Court finds this as an appropriate baseline for determining post-judgment royalties.

The Court next addresses the parties changed circumstances in light of the *Georgia-Pacific* factors. Internet Machines points to numerous documents and testimony from trial in arguing that a number of the factors strongly suggest an increase is warranted in the royalty rate. But all of the evidence Internet Machines points out was previously before the jury and considered at the time the jury addressed damages. This evidence provides no insight into the parties' subsequent changed circumstances.

The only new information provided by Internet Machines is a letter dated 13 days after trial from Simon Michael to PLX's board of directors. Mr. Michael is the manager of a nearly 10% shareholder of PLX. In the letter, Mr. Michael is critical of PLX's growth strategy and claims that a series of acquisitions has destroyed shareholder wealth. Mr. Michael urges PLX to focus on improving its valuable PCI Express switch business. Internet Machines argues that the accused feature increasingly appears on PLX's switches and is therefore probative evidence of the value of the use of the invention. *See Georgia-Pacific*, *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (outlining as an 11th factor "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use").

The Court does not find that the assertions in Mr. Michael's letter warrant an increased royalty rate. Although the letter touts the value of PLX's switch business, it does not address the value of the asserted invention. Internet Machines' conclusion that the asserted invention is the foundation of Mr. Michael's comments is unsupported. Accordingly, the Court does not find that this letter positively impacts the royalty rate as suggested by Internet Machines.

Defendants do not present any evidence of the parties' changed circumstances. Rather, Defendants continue to discredit Internet Machines' damages model. Defendants insist that their damages model is superior because it apportions damages to the accused functionality. As previously noted, the Court rejects Defendants' contention that Internet Machines improperly calculated damages. Based on the evidence presented by both parties, the Court does not find that Defendants' damages model is a more reliable or accurate forecast for post-judgment damages.

In relying upon the *Georgia-Pacific* factors, the Court finds no basis to depart from the reasonably running royalty that serves as the foundation of the jury's verdict. Next, the Court must assess whether enhanced damages are justified.

"Following a jury verdict and entry of judgment of infringement and no invalidity, a defendant's continued infringement will be willful absent very unusual circumstances." *Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 899 (E.D. Tex. 2011); *see also Mondis*, 822 F. Supp. 2d at 649. In determining whether enhanced damages are appropriate, the Court looks to the *Read* factors. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826–27 (Fed. Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975–78 (Fed. Cir. 1995) (en banc). These factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when it knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *Id.*

The first *Read* factor is neutral because the Court finds no evidence of intentional copying. The second and fifth *Read* factors weigh heavily in favor of an enhanced ongoing royalty. Because the jury found that Defendants infringe valid patents, they cannot now claim in good faith defenses regarding either non-infringement or invalidity. The third *Read* factor is neutral since, as previously stated, the Court does not find Defendants engaged in any litigation misconduct.

The fourth *Read* factor is neutral. Defendants are large companies while Internet Machines is considerably smaller by comparison. This alone would balance in favor of enhanced royalties. But not all of the Defendants are in financially healthy conditions. Internet Machines alleges PLX's revenue and gross profit figures for 2010 and 2011 indicate PLX is capable of absorbing enhanced damages. Yet, PLX's public financial disclosures more accurately reflect that PLX's operations have experienced net losses over the past several years. Although there can be legitimate business explanations for running net losses, neither party asserts them here. Ultimately, the Court finds that PLX would be capable of paying enhanced damages going forward. But out of an abundance of caution in regards to PLX's financial decline, the Court finds this factor neutral.

The sixth and seventh *Read* factors strongly weigh in favor of enhanced post-judgment damages. At this point, it is unclear how long Defendants would continue infringement. But PLX states it would cease providing the infringing functionality within three months of a final non-appealable judgment. This actually suggests that a high enhancement rate would be appropriate because Defendants could so easily cease infringement. Furthermore, Defendants have taken no actions to avoid infringement. Overall, the Court finds these factors further justify an enhanced royalty rate.

The eight *Read* factor concerning Defendants' motivation for harm is neutral. There has been no evidence that Defendants' infringement is motivated by a desire to harm Internet Machines or otherwise force it out of business. Similarly, the last *Read* factor is also neutral. The Court does not find that Defendants attempted to conceal their infringement.

The Court finds that Defendants post-judgment infringement of the valid patents is willful. In balancing the *Read* factors, the Court concludes an enhanced post-judgment royalty rate is substantiated. In this particular circumstance, the Court finds a 50% increase in the royalty rate appropriate. Thus, Internet Machines is entitled to a post-judgment royalty of 9% of the sales of any infringing switches.

### K.  Plaintiff's Amended Motion for Award of Costs (Doc. No. 556)

This motion is **GRANTED**.

Internet Machines additionally requests an award of costs as the prevailing party. Defendants object to the timing of Internet Machines' request. Because Defendants are contesting the jury's verdict, they believe Internet Machines' motion is more properly addressed after the entry of final judgment. Even though Defendants believe the request is premature, Defendants do not object to the specific amount sought as costs.

The Court finds no reason to delay addressing this issue. Pursuant to Federal Rule of Civil Procedure 54(d)(1), a prevailing party is generally awarded costs of court as a matter of course. In this case, Internet Machines is the prevailing party. Accordingly, the Court awards costs to Internet Machines in the amount of $78,661.25.

### L.  Plaintiff's Motion for Pre and Post-Judgment Interest (Doc. No. 548)

This motion is **GRANTED**.

Internet Machines now moves for prejudgment and post-judgment interest. The Court addresses each in turn.

### 1.  Prejudgment Interest

Internet Machines requests an award of prejudgment interest at the annual prime interest rate compounded quarterly. Conversely, Defendants believe it is more accurate to calculate prejudgment interest at the Treasury bill (T-Bill) rate[6] or the 10-year Treasury rate, and that the interest should be compounded annually.

Courts freely award prejudgment interest absent significant justifications, which may include delay in filing suit. *See Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012) ("The award of pre-judgment interest is 'the rule not the exception.'" (quoting *Sanofi-Aventis v. Apotex Inc.*, 659 F.3d 1171, 1177 (Fed. Cir. 2011)). Courts retain broad discretion in determining prejudgment interest, including the appropriate rate and compounding frequency. *See Fractus, S.A. v. Samsung Elecs. Co., Ltd.*, 876 F. Supp. 2d 802, 855 (E.D. Tex. 2012). "An award of prejudgment interest carries out Congress's 'overriding purpose of affording patent owners complete compensation' since a patentee's damages also include the 'forgone use of the money between the time of infringement and the date of judgment.'" *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 36 (Fed. Cir. 2012) (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655–56 (1983)).

Here, Internet Machines did not delay in enforcing its rights and there is no other rational for disallowing an interest award. Accordingly, prejudgment interest is appropriate. In this case, the Court finds the prime interest rate better approximates Internet Machines' foregone investment opportunity. Accordingly, the Court awards Internet Machines prejudgment interest

---

[6] Although PLX states that the T-bill rate is an appropriate measure, it does not indicate what maturity period is appropriate. T-bills commonly have maturities of four weeks, 13 weeks, 26 weeks, or 52 weeks. The return rates vary for each of these maturity periods.

at the prime interest rate in effect as of the date of this order, compounded quarterly. This interest is to be calculated from the date of first infringement through the date of final judgment.

### 2. *Post-Judgment Interest*

Defendants acknowledge that if Internet Machines prevails in this action, it is entitled to post-judgment interest at the lawful federal rate pursuant to 28 U.S.C. § 1961. The Court agrees and awards Internet Machines post-judgment interest at the lawful federal rate in effect as of the date of this order.

### M. Plaintiff's Motion for Entry of Judgment (Doc. No. 547)

This motion is **GRANTED IN PART** as reflected in the Court's contemporaneously issued final judgment.

### IV. CONCLUSION

For the forgoing reasons, the Court enters the above rulings on the parties' post-trial motions.

**It is SO ORDERED.**

**SIGNED this 19th day of June, 2013.**


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE